**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MACK MANDRELL LOYDE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:14-cv-01754** |
| | ) | **Judge Trauger / Knowles** |
| **CORRECTIONS CORPORATION OF** | ) | |
| **AMERICA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

**I.  Introduction and Background**

This matter is before the Court upon Defendants' Motion for Summary Judgment, filed

on February 3, 2015.  Docket No. 61.  In support of their Motion, Defendants have filed a

Memorandum of Law (Docket No. 64), a Statement of Undisputed Material Facts (Docket No.

65), the Affidavit of Blair Leibach (Docket No. 62), and the Affidavit of Audrey Rimmer with

Exhibits (Docket Nos. 63 - 63-4).

On February 18, 2015, Plaintiff filed a "Motion / Request for The Dismissal of

Defendants' Motion for Summary Judgment" (Docket No. 80), which the undersigned will

construe as a response.  The following day, Plaintiff filed an Affidavit.  Docket No. 81.  One day

later, Plaintiff filed another Affidavit.  Docket No. 82.  On February 26, 2015, Plaintiff filed

additional materials "to be added to [his] motion / request to dismiss the defendants' motion for

summary judgement [*sic*] and listed as Exhibit A."  Docket No. 84. On March 2, 2015, Plaintiff

filed another "Request / Motion to Dismiss Defendants' Motion for Summary Judgment."

Docket No. 87.

With leave of Court (Docket No. 88), Defendants have filed a Reply (Docket No. 89).

On March 11, 2015, Plaintiff filed another Affidavit. Docket No. 94. A few days later, on March 16, 2015, Plaintiff filed a "Motion for Permission to Send Additional Paperwork In Support of His Opposition to Defendants' Undisputed Material Facts and Memorandum of Law and Motion for Summary Judgment." Docket No. 95. Two days later, on March 18, 2015, Plaintiff filed a "Request / Motion to Have Verified Complaint Accepted As An Affidavit In Opposition to Defendants' Motion for Summary Judgment." Docket No. 99. Two days after that, on March 20, 2015, Plaintiff filed his Declaration and another Affidavit. Docket Nos. 100, 101. Four days later, on March 24, 2015, Plaintiff filed another Declaration. Docket No. 102.

Plaintiff, who is proceeding pro se and in forma pauperis, originally filed two separate actions alleging that Defendants violated his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1, Case No. 3:14-cv-01754; Docket No. 1, Case No. 3:14-cv-01762. Plaintiff's two actions have been consolidated into Case No. 3:14-cv-01754.

Plaintiff is a State inmate who, at all times relevant to the case at bar, was housed at "CCA / Metro. Davidson County Detention Facility." Docket No. 1. Plaintiff avers that another inmate attacked him in the face with a sock containing two metal combination locks, causing injuries requiring emergency surgery. *Id.* Plaintiff acknowledges that his attacker was thereafter placed in segregation and charged with aggravated assault, but he contends that Defendants knew that his attacker was violent and yet placed him in "low point security," in violation of CCA policy 14-4-4. *Id.* Plaintiff avers that Defendants "are liable for deliberate indifference" because he was an "obvious victim," he warned Unit Manager Carlton Dethrow, and they failed to protect him; and because, knowing the other inmate was aggressive and violent, they placed him in a dangerous situation by not having the other inmate in segregation. *Id.* Plaintiff avers that

Defendants have a wide spread custom of violating policy, allowing dangerous inmates to interact with other inmates, and not protecting the inmates.[1] *Id.* Plaintiff further avers that Defendant Leibach "rubber stamps" this practice through his grievance denials. *Id.* Plaintiff additionally avers that CCA officials failed to train or supervise their employees and promulgate policies to guide employee conduct, and that CCA allowed dangerous conditions to exist by selling metal combination locks to the Jail's general population, rather than selling smaller, plastic locks. *Id.*

Plaintiff also argues that, as a result of his reporting the incident and filing a complaint, he has been "targeted, harassed, intimidated by, threatened by, mistreated by, physically abused by several (certain) employees" of the facility, and has "been denied informals & grievances & [he] was denied legal access to the courts or an attorney." *Id.* Plaintiff further contends that, in an "act of retaliation, false disciplinary reports have been filed against [him], and [he has] been discriminated against regarding jobs, programs & disciplinary procedures & procedures [*sic*]." *Id.* He also contends that he "was 'knowingly' & 'intentionally' placed in the same pod/unit with [his] attacker ... along with his family relatives, whom are either inmates or employees here at this facility," and that "certain employees here at this facility have enlisted the aid of inmates in an attempt to get [him] to drop criminal charges" against his attacker. *Id.* Plaintiff additionally argues that, "in an act of retaliation, [he has] been denied [his] sentence credits, [his] exp. date has been tampered with & in an attempt to keep [him] silent, [he has] been threatened with write-ups & segregation." *Id.*

---

[1] Plaintiff alleges, "violence has risen in the first 5 months of 2014 ... under the direction of Leibach and Carlton." *Id.* Plaintiff notes that "Officer Brooks was terminated for his allowing dangerous inmates to fight to the finish under locked close quarters - food prep room." *Id.*

Plaintiff sues Defendants in their individual and official capacities. *Id.* He seeks injunctive relief, transfer to a facility where he will be safe (either "CJC" in "lock-up" or Lois M DeBerry Special Needs Facility in "safekeep status"), replacement of taken commissary, corrected "exp. dates," as well as monetary damages. *Id.* Plaintiff also requests to be "separated or kept away from" a list of fifteen people "and other employees with whom [he has] no knowledge of their names." *Id.*

Defendants filed the instant Motion and supporting materials arguing that they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act ("PLRA"); and (2) respondeat superior is not a basis for the imposition of liability. Docket No. 61. Defendants also argue that they are entitled to summary judgment because: (1) taking Plaintiff's allegations of harassment, intimidation, and threatening by CCA employees as true, those allegations are insufficient to state a constitutional claim, as they do "not constitute the type of infliction of pain that the Eighth Amendment prohibits"; (2) taking Plaintiff's allegations that he was denied "informals" and grievances as true, those allegations are insufficient to state a constitutional claim, as "there is no constitutionally protected due process right to unfettered access to prison grievance procedures"; (3) taking Plaintiff's allegations that he was housed with his attacker as true, Defendants acknowledge that there have been times when both inmates have been housed in the Segregation Unit, but argue that Plaintiff was not placed in danger in those instances because he was housed in a different cell from his attacker and was escorted by corrections officers when moving within the Segregation Unit; and (4) beyond his initial attack, Plaintiff has failed to allege that he suffered any physical injury as a result of the remainder of his allegations. Docket No. 64.

In Plaintiff's submissions that this Court will construe as his Response,[2] Plaintiff

contends that Defendants' Motion should be denied because: (1) as a pro se incarcerated

Plaintiff, he does not have all the legal assistance and materials he needs to "create a solid

argument or statement of disputed facts" to oppose Defendants' Motion; (2) he has been placed

on "property restriction" numerous times, thereby allowing CCA employees an opportunity to

"confiscate several selected pieces of legal notes or documents [relating to this case] that appear

to be suspicious or a threat to security" or that could support his opposition to Defendants'

Motion; (3) he has been subject to "bogus cell search[es]" that allow CCA employees to enter

his cell and take more documents; (4) he followed the requirements of the PLRA because "each

time he filed an 'informal' for (different) reasons regarding the attack" it came back unresolved

so he then filed a second level grievance on each but was told nothing had been received, and

each time he re-filed the second level grievances he was ignored, such that he ultimately

"verbally addressed these issues with (Warden) Leibach but was brushed off"; (5) his retaliation

escalated beyond just harassment, threats, and intimidation when he was placed in "strip cell

confinement status, (without) a blanket, mattress, hygiene items, legal paperwork, clothes or

shoes"; (6) Defendants "obvious[ly]" knew that the other inmate was violent and that placing

him in a low security, general population area with access to commissary where metal locks were

sold was dangerous and carried with it a strong possibility than an inmate would be harmed, but

---

[2] Plaintiff filed a "Motion/Request For The Dismissal Of Defendants' Motion For Summary Judgment" on February 18, 2015 (Docket No. 80), and a "Request/Motion To Dismiss Defendants' Motion for Summary Judgement [*sic*]" on March 2, 2015 (Docket No. 87), which the Court will construe as Plaintiff's Response. On February 19 and 20, 2015, between the filing of those two "Motions," Plaintiff also filed two personal Affidavits (Docket Nos. 81, 82), the contents of which the undersigned will discuss in Section II, *infra*.

placed him there anyway; (7) Defendants also knew that there "was a supposed price on [Plaintiff's] head and that he was supposedly involved in an (internal) gang dispute over rank" but did nothing to protect him; (8) Defendants continued to allow metal locks to be sold even after the attack; (9) there are disputed material facts in this action; and (10) certain CCA employees have refused to give him legal supplies, notary services, or certain legal research books and have refused to give him information he needs to locate witnesses. Docket No. 80.

Plaintiff also contends that statements in the Affidavit of Audrey Rimmer are incorrect. Docket No. 87. Specifically, Plaintiff contends that he filed both a "Loss Property Form" regarding his stolen property and an "informal" regarding the attack. *Id.* Plaintiff reiterates that he followed the "grievance / PLRA procedure" but his "grievances/informals" were ignored and he did not receive responses to them, and Plaintiff argues that the "informals" he filed regarding being targeted, harassed, intimidated, and threatened "were never heard." *Id.* Plaintiff stated that he "disputes/opposes all of the Defendants' statement of facts and allegations," such that the Court must deny Defendants' Motion. *Id.* Plaintiff notes that Defendants have refused to comply with his requests for discovery and "have taken possession of selected pieces of [his] legal document[s]" and have "refused to allow [him] to receive certain legal documents, statements from witnesses and legal books - material," resulting in his not having "sufficient opportunity to obtain the necessary documentary evidence, locate witnesses and gather all/any information relevant to this case." *Id.*

As noted, with leave of Court, on March 3, 2015, Defendants filed a Reply to Plaintiff's submissions. Docket No. 89. In their Reply, Defendants argue that they are entitled to summary judgment because, despite an "express instruction from the Court regarding his obligation to

respond to Defendants' statements of undisputed material fact, [Plaintiff] failed to respond to a single statement," such that "each statement of undisputed material fact should be deemed admitted." *Id.* Defendants also argue that, although Plaintiff did file three informal resolutions that are "somewhat" related to the attack resulting in his broken jaw, Plaintiff did not exhaust his administrative remedies as required by the PLRA because he failed to complete the grievance process since he did not file a formal grievance or a grievance appeal regarding that attack. *Id.* Defendants further argue that Plaintiff did not exhaust his administrative remedies as required by the PLRA because he failed to file an informal resolution, formal grievance, or grievance appeal related to his contention that CCA employees allegedly harassed, intimidated, mistreated, abused, targeted, and threatened him. *Id.*

Regarding the points raised in Plaintiff's submissions, Defendants contend: (1) Plaintiff's claims that he was denied access to the grievance procedures are conclusory, nonspecific, and insufficient to survive Defendants' Motion; (2) Plaintiff's contention that he verbally raised his complaints with the Warden such that he completed the exhaustion requirement, fails to do so because the grievance-appeal stage requires that the inmate submit a written appeal of the formal grievance to the Warden or his designee, and does not provide the option of making verbal complaints; (3) Plaintiff has failed to provide the requisite specificity regarding his affirmative efforts to comply with the grievance procedures: he has not stated when he submitted the formal grievances, to whom he submitted the formal grievances, where he placed the formal grievances, or what he specifically said to CCA employees regarding his formal grievances; (4) Plaintiff cannot hold CCA liable because he failed to direct the Court to an official CCA policy or "even one other incident of CCA employees failing to protect inmates from violence at the hands of

other inmates"; (5) Defendants have fully responded to Plaintiff's interrogatories and requests for production; (6) Plaintiff has failed to identify what information he still needs in order to be able to respond to Defendants' Motion, and he has failed to identify the legal materials that allegedly were confiscated, who allegedly confiscated the legal materials, or the arguments in Defendants' Motion that the legal materials would allow him to address; and (7) taunts and verbal abuse do not rise to the level of a constitutional violation. *Id.*

On March 11, 2015, Plaintiff filed his Affidavit, which appears to be a response to Defendants' Reply. Docket No. 94. On March 16, 2015, Plaintiff filed a "Motion For Permission To Send Additional Paperwork In Support Of His Opposition To Defendants' Undisputed Material Facts And Memorandum Of Law And Motion For Summary Judgement [*sic*]" (Docket No. 95), which seeks just that. Two days later, on March 18, 2015, Plaintiff filed a "Request/Motion to Have Verified Complaint[3] Accepted As An Affidavit In Opposition To Defendants' Motion for Summary Judgement [*sic*]" (Docket No. 99, footnote added), which likewise seeks as the title suggests. Two days after that, on March 20, 2015, Plaintiff filed his Declaration and another personal Affidavit. Docket Nos. 100, 101. Four days after that, on March 24, 2015, Plaintiff filed another personal Declaration. Docket No. 102.[4]

For the reasons to be discussed below, the undersigned finds that genuine issues of

---

[3] The undersigned notes that Plaintiff's Complaint in Case No. 3:14-cv-01754 is neither verified, nor signed. Plaintiff's Complaint in Case No. 3:14-cv-01762, filed the same day, however, is notarized and signed, and it appears to be a "continuation" of Plaintiff's Complaint in Case No. 3:14-cv-01754. As has been noted, Plaintiff's actions have been consolidated. For purposes of the instant Motion, the undersigned will construe Plaintiff's Complaint as a Verified Complaint.

[4] The contents of Plaintiff's Declarations and Affidavits will be discussed in Section II, *infra*.

material facts exist such that Defendants' are not entitled to a judgment as a matter of law.

Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment be
DENIED.

## II. Facts[5]

### A. Facts of Plaintiff's Verified Complaint

The facts of Plaintiff's Verified Complaint have been set forth in detail in Section I
above. Accordingly, they will not be recounted again here.

### B. Affidavit with Exhibits of Audrey Rimmer, CCA Quality Assurance Administrative Assistant and Informal Resolution Coordinator

CCA implemented an administrative grievance system that inmates at the Detention

Facility can use to seek redress of issues relating to the conditions of their confinement. Docket

No. 63., ¶ 3. The substantive and procedural aspects of CCA's administrative grievance system

are delineated in CCA Policy 14-5, Inmate/Resident Grievance Procedures. *Id.*, Ex. A. Pursuant

to Policy 14-5, the processing of a standard inmate grievance at the Detention Facility consists of

three stages: (1) within seven days of becoming aware of a specific grievable issue, the inmate

must file an Informal Resolution, and a department-level supervisor or other appropriate official

must respond within fifteen days of its receipt; (2) if the inmate is dissatisfied with the response

to the Informal Resolution, the inmate must file a Formal Grievance within five days, and the

Grievance Officer must respond within fifteen days of receiving the Formal Grievance; and (3) if

the inmate is dissatisfied with the response to the Formal Grievance, the inmate must file a

Grievance Appeal within five days, and the Warden must respond within fifteen days of

---

[5] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56.

receiving the Grievance Appeal. *Id.*, ¶ 4.

Plaintiff filed three Informal Resolutions "somewhat related to the incident on May 5, 2014 that lead to [him] suffering from a broken jaw." *Id*., ¶ 5, Ex. B.  Plaintiff did not specifically complain in those Informal Resolutions about the attack or his injuries, but instead focused on his complaint that some of his property was allegedly taken while he was being treated for his injuries. *Id.*  CCA received Plaintiff's three Informal Resolutions on May 9, 2014, May 14, 2014, and May 23, 2014. *Id.*, ¶ 6.  A CCA employee responded to Plaintiff's Informal Resolutions regarding or mentioning the incident on May 5, 2014, but Plaintiff did not file a Formal Grievance or appeal any Formal Grievance to the Warden through a Grievance Appeal. *Id.*  Plaintiff therefore failed to complete the grievance process for this claim. *Id.*

Prior to August 26, 2014, the date on which Plaintiff filed his Complaints in this matter, Plaintiff did not file any Informal Resolutions, Formal Grievances, or Grievance Appeals related to allegations that he had been targeted, harassed, intimidated, threatened, mistreated, or abused by CCA employees. *Id.*, ¶ 7.

## C.  Plaintiff's Affidavit, Filed February 19, 2015[6]

Plaintiff is being housed in segregation, without legal resources, legal supplies, or

---

[6] Plaintiff alleges that his Affidavit is not notarized because he is being denied notary services, but it does contain the following statement:

> I, Mack Mandrell Loyde, hereby makes the following statement(s), while knowing that if my statements are found to be untrue, I could be charged with perjury.  And so, under oath, I swear to tell the absolute truth, nothing less.

Docket No. 81.

The undersigned will therefore accept this Affidavit for purposes of the instant Motion.

adequate access to all legal research books from the law library. Docket No. 81, ¶¶ 1, 3. In an act of retaliation for filing his claims against Defendants, he is being denied notary services and copies of legal documents. *Id.*, ¶ 3. Plaintiff is also being "denied informals/grievances and adequate/sufficient medical care treatment requests, to receive envelopes from mail room clerks so that [he] can send the necessary paperwork to this Honorable Court." *Id.*

Since May 5, 2014, Plaintiff has filed three separate Informal Resolutions regarding not only the unexpected attack upon him by the other inmate, but also regarding the theft of his personal property. *Id.*, ¶ 4. Each time Plaintiff inquired about his Informal Resolutions, he was informed that it had not been received and to file another Informal Resolution. *Id.* Plaintiff "was then heard on the first grievance/informal and given a grievance" to take his complaint to the second level of the grievance process. *Id.* Plaintiff gave his grievance to Correctional Counselor Anita Jenkins to turn in, but he never received a response. *Id.* Plaintiff filed two more grievances regarding this issue and he spoke with Assistant Warden Jerry Wardlow regarding him not receiving a response, but he "was brushed off." *Id.* Plaintiff waited until August for a response, and when none came, he filed the instant action. *Id.*

In addition to speaking with Assistant Warden Jerry Wardlow about the unresponded to grievances/informals he filed pertaining to the attack, Plaintiff also spoke to Medical Contractor Tonya Gunter, Correctional Counselor Anita Jenkins, and Chief of Unit Management Frederick Perry, and was told that his allegations would be investigated. *Id.*, ¶ 6.

The filing dates of Plaintiff's informals/grievances regarding the May 5, 2014, attack/incident have been altered. *Id.*, ¶ 7.

**D. Plaintiff's Affidavit, Filed February 20, 2015[7]**

Plaintiff is being housed in segregation and being denied notary services. Docket No. 82, ¶¶ 1, 3. Since filing the instant action, Plaintiff's "living conditions have become more harsher and more dangerous." *Id.*, ¶ 3. He is being retaliated against, denied legal supplies, denied full access to the courts, denied full access to all legal research books and CCA policies and procedures, denied sufficient time with all legal research books, denied legal calls, denied adequate and sufficient medical care, denied notary services or copies of legal documents that need to be sent to this Honorable Court. *Id.* His incoming and outgoing legal mail is being tampered with and delayed. *Id.* Plaintiff is also being denied regular exercise periods or an opportunity to participate in programs. *Id.*

Because Plaintiff has refused to "drop/dismiss" this action, several CCA employees have labeled him a snitch or a federal agent and have enlisted the aid of other inmates to "encourage/ force" him to drop his complaint. *Id.*, ¶ 4. Plaintiff has, within his possession, "grievances/ informals and incident statements" and "medical documents" that have been forged "under the guidance of higher-ups." *Id.*, ¶ 5. In an attempt to "hinder" or "stop" him from pursuing his

---

[7] Again, Plaintiff's Affidavit is not notarized because he alleges that he is being denied notary services, but it does contain the following statement:

> I, Pro Se Plaintiff, Mack Mandrell Loyde, do swear, that the following statement(s) are/is the absolute truth and nothing less, and that the following statements are based on actual personal knowledge, fact to face admissions from witnesses and legal documents.

Docket No. 82.

The undersigned will therefore accept this Affidavit for purposes of the instant Motion.

claims, several false disciplinary reports have been filed against him, and he has been placed on various forms or restriction, including strip cell confinement and property restriction. *Id.*, ¶ 6.

Counsel for Defendants has not complied with all requests for documents/discovery, location of witnesses, duty rosters, and other requested information that is relevant to this case, but instead, have only turned over that which they feel Plaintiff should have. *Id.*, ¶ 7.

## E. Plaintiff's Affidavit, Filed March 11, 2015[8]

Prior to filing the instant action, Plaintiff attempted to follow "CCA/Metro's administrative grievance system but, was denied a response and grievance regarding his informal pertaining to this matter." Docket No. 94, ¶ 1.

Incident statements regarding the attack on May 5, 2014 were forged. *Id.*, ¶ 2.

Warden Leibach, Assistant Warden Corlew, Assistant Warden Wardlow, former Chief of Security Pittman, former Chief of Unit Management Perry, former "STG" Coordinator Sgt. Simeon, Unit Manager Dethrow, Institutional Investigator Davis, and former Mental Health Coordinator Kinnerman, together as the review board, "knew" that the inmate that attacked

---

[8] As has been noted, Plaintiff's Affidavit is not notarized because he alleges that he is being denied notary services, but it does contain the following statement:

> I, Plaintiff Mack Mandrell Loyde, dealing with this case in pro se status, who is currently serving time at Metro-Davidson-County-Detention-Facility, which is being operated by employees of CCA Corrections Corporation of America, being housed in segregation/ solitary confinement (Pod 3) 025 cell am competent to testify to the matters stated herein and make this affidavit based on personal knowledge and/or knowledge made reasonably available to me.

Docket No. 94.

The undersigned will therefore accept this Affidavit for purposes of the instant Motion.

Plaintiff was extremely dangerous, a security risk, and yet intentionally placed him in unit Echo with other inmates whose security levels ranged from minimum to maximum. *Id.*, ¶ 3. The review board and Mental Health Nurse Practitioner Staci Turner had received information that Plaintiff "had a hit on him because he was supposedly false [*sic*] claiming the/a high ranking status in the gang." *Id.*

Plaintiff was placed in segregation after filing the instant action. *Id.*, ¶ 4.

Plaintiff is being retaliated against "with authorization from" Warden Leibach, Assistant Warden Corlew, Assistant Warden Wardlow, former Chief of Security Pittman, former Chief of Unit Management Perry, Institutional Investigator Davis, "and other higher-ups or employees with authority." *Id.* That retaliation includes delaying in issuing Plaintiff his regular incoming mail and legal research books, opening legal mail outside of Plaintiff's presence, delay in sending out Plaintiff's regular and legal mail, denying Plaintiff full access to the courts, denying Plaintiff legal supplies, denying Plaintiff sufficient medical care treatment, denying Plaintiff regular exercise, and denying Plaintiff showers. *Id.* Also, because Plaintiff would not "drop/dismiss" this action, CCA employees have labeled him a "snitch" and "under cover agent" and have encouraged other inmates to "deal with" him and to physically harm him whenever the opportunity presents itself. *Id.*, ¶ 5.

Plaintiff continues to be denied notary services, "adequate and sufficient" access to the law library and legal research books, and is being allowed to get only limited copies of legal documents to send to the Court. *Id.*, ¶ 6.

Defendants' counsel has still refused to comply with Plaintiff's request for specific discovery information. *Id.*, ¶ 7.

**F. Plaintiff's Declaration and Affidavit, Filed March 20, 2015[9]**

Plaintiff continues to be retaliated against because he filed the instant action and has "refused to drop or dismiss" his complaints. Docket No. 101, ¶ 3.

Plaintiff continues to be denied notary services, legal supplies, "adequate and sufficient medical care/treatment," and "full, adequate, and sufficient access" to legal research books from the library and law library. *Id.*, ¶ 4. Plaintiff's incoming and outgoing legal and regular mail continues to be delayed, and he continues being denied full access to the courts. *Id.,* ¶¶ 4, 5.

Plaintiff has sent "several" handwritten "complaints to higher-ups," and has filed "several" informals/grievances about the retaliation, denial of access to the courts, unlawful confiscations of "selected pieces" of legal documents regarding this case, but his informals/grievances have been ignored. *Id.*, ¶ 6.

Certain CCA employees are filing false disciplinary reports against Plaintiff and, "even

_____

[9] Plaintiff's Declaration states in its entirety:

> Pursuant to 28 U.S.C. 1746, I declare (or certify, verify, or state) under penalty of perjury that the following is true and correct.

Docket No. 100.

Plaintiff filed his Declaration simultaneously with an Affidavit, which allegedly is not notarized because Plaintiff is being denied notary services, but which contains, *inter alia*, the following statement:

> I am (still), competent to testify to the matters stated herein and make this affidavit based on personal knowledge and/or knowledge made reasonably available to me.

Docket No. 101.

The undersigned will accept this Declaration and Affidavit for purposes of the instant Motion.

without solid evidence, DTTO Sgt. Cato still manages to find [Plaintiff] guilty and place [him] on phone restriction, in an attempt to stop - hinder [him] from speaking with associates, family, or legal officials who could help [him] with investigative procedures and legal research." *Id.*, ¶ 7.

On February 12, 2015, Plaintiff's family ordered him a legal book entitled "Prisoner's Self Help Litigation Manual" from Amazon, but Case Manager Hawkins and Correctional Counselor Jenkins, with assistance from the mail room clerk Kimberly Parks, intercepted the book and held it for over two and a half weeks, and did not tell Plaintiff that they had his book. *Id.*, ¶ 8. Sgt. Tammy Brown knew that Plaintiff's book had been intercepted but did not notify Plaintiff of that fact. *Id.*

On January 22, 2015, Correctional Counselor Jenkins took "full possession" of all of Plaintiff's personal property and legal documents while Plaintiff was extracted from his cell in solitary confinement and escorted to a different Pod and placed on suicide precaution status. *Id.*, ¶ 9. Plaintiff's property and legal documents were taken to the Unit Management Team's office and left in the office, instead of being taken to the storage room where property is supposed to be stored. *Id.* Several selected pieces of legal documents were missing when the remainder of his property was returned to Plaintiff. *Id.*

Plaintiff has sent to Defendants' counsel several handwritten requests for specific documents, discovery, and location of witnesses, but has been "flat out rejected, ignored, and denied." *Id.*, ¶ 10.

Plaintiff has also sent to Jail medical personnel several requests for specific medical documents that "were left out of the package that counsel sent to me (intentionally)." *Id.*, ¶ 11.

Plaintiff has been limited to only a few copies per week, per Warden Leibach and Assistant Warden Wardlow. *Id.*, ¶ 12. Assistant Warden Wardlow has also instructed medical personnel to not give Plaintiff copies of his medical documents file, and to "reject any/all requests made for copies." *Id.*

Because of threats made by certain CCA employees at the Jail, Plaintiff has refused to come out of his cell for any reason, including showers. *Id.*, ¶ 13.

**G. Plaintiff's Declaration Filed March 24, 2015**[10]

Plaintiff continues to be denied notary services, full access to the courts, and full access to legal research law books. Docket No. 102, ¶ 1. He also continues to be denied legal copies of legal documents to send this Court. *Id.*, ¶ 5.

Selected pieces of Plaintiff's legal documents regarding the instant action that have been taken from him at various times have not been returned to him. *Id.*, ¶ 2. Counsel for Defendants continues to refuse to honor Plaintiff's requests for specific discovery, specific documents, and "information which is essential/vital," including the location of witnesses. *Id.*, ¶¶ , 63.

CCA employees continue to retaliate against Plaintiff and attempt to convince him to "drop/dismiss" this action. *Id.*, ¶ 4. Case Manager Hawkins and Correctional Counselor Jenkins intercepted Plaintiff's legal help book and held it for weeks and Plaintiff had to file "several

---

[10] Plaintiff's Declaration contains the statement:

> Pursuant to 28 U.S.C. 1746, I declare (or certify, verify, or state) under penalty of perjury that the following is true and correct.

Docket No. 102.

The undersigned will accept this Declaration.

informals" and speak with "several employees with authority" to get his legal book.  *Id.*, ¶ 7.

### III.   Analysis

#### A.  Local Rules 56.01(c) and (g)

Local Rules 56.01(c) and (g) state, in pertinent part:

> c.  Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> g.  Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Although Plaintiff has failed to properly respond to Defendants' statement of undisputed material facts, Plaintiff has filed numerous Affidavits that address the facts set forth in Defendants' statement of undisputed material facts, and Plaintiff has explained why he has been unable to properly respond to Defendants' statement of undisputed material fact or properly file his own such statement.  Because Plaintiff is pro se and has filed Affidavits addressing the facts set forth in Defendants' statement of undisputed material facts, the undersigned will accept Plaintiff's submissions as a response to Defendants' statement of undisputed material facts.

#### B.  Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983

### 1.  Generally

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2. Eighth Amendment**

**a. Generally**

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel

and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

## D.  The Case at Bar

As a preliminary matter, in her Order filed September 10, 2014, Judge Trauger found that, upon initial review, Plaintiff had stated a colorable claim for relief for Defendants' failure to properly protect him, as they are constitutionally required to do.  Docket No. 5.  Although Plaintiff proffers many allegations in his submissions, the primary issue before the Court therefore, is whether genuine issues of material fact exist with regard to whether the remaining Defendants violated Plaintiff's constitutional rights by failing to protect him from the harmful conduct of fellow inmates, and if not, whether Defendants are entitled to a judgment as a matter of law on that claim.  Also before the Court is the issue raised by Defendants of whether Plaintiff exhausted his administrative remedies prior to filing the instant action, as required by the PLRA.

As has been demonstrated, there are genuine issues of material fact with regard to whether Plaintiff has satisfied the PLRA's exhaustion requirement.  Accordingly, Defendants cannot prevail on this ground.

As has also been demonstrated, there are genuine issues of material fact with regard to

what Defendants knew and whether Defendants breached their constitutional duty to protect Plaintiff from attacks by other inmates. Defendants, therefore, are likewise not entitled to summary judgment on this ground.

With regard to Defendant CCA, Plaintiff has alleged a pervasive, widespread custom of being deliberately indifferent to the safety of inmates, such that CCA is not entitled to a judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, genuine issues of material fact exist and Defendants are therefore not entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 61) be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge